UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BULLSEYE TELECOM, INC.,
a Michigan corporation,

        Plaintiff,                                    Case No.

v.                                                      Hon.

CISCO SYSTEMS, INC.,
a California corporation,

        Defendant.

## COMPLAINT

Plaintiff BULLSEYE TELECOM, INC., for its complaint against defendant CISCO SYSTEMS, INC., states:

### NATURE OF ACTION

1. This is a breach of warranty action in which plaintiff BullsEye Telecom, Inc. (BullsEye) seeks damages from defendant Cisco Systems, Inc. (Cisco) caused by a defective Cisco router.

### PARTIES, JURISDICTION AND VENUE

2. BullsEye is a Michigan corporation with its principal place of business located in Oak Park, Michigan.

3. BullsEye is a competitive local exchange carrier in the State of Michigan. BullsEye provides various telecommunications services, including internet connection services, to businesses nationwide. Its core product offerings of voice-over internet protocol, data, local and long distance telephone services are offered to businesses in forty-eight (48) states.

4. Cisco is, on information and belief, a California corporation with its principal place of business located in San Jose, California.

5. Cisco develops and offers internet protocol-based networking technologies. Cisco's core development areas are routing and switching. Cisco sells hardware, software and service offerings, which are used to provide internet connectivity solutions.

6. Subject matter jurisdiction in this Court is proper under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7. This Court has personal jurisdiction over Cisco and venue in this Court is proper under 28 U.S.C. § 1391(a) because Cisco resides in this district.

## **GENERAL ALLEGATIONS**

8. Cisco manufactured the series 7613 router (the Router) that is at issue in this litigation.

9. A router is a piece of computer equipment that is tailored to route and forward high-speed data information over the internet. Routers generally contain specialized operating systems and one or more processors.

10. In July 2005, Cisco sold the Router to SBC DataComm, a Delaware corporation, which is an affiliate of SBC Global Services, Inc., also a Delaware corporation (hereinafter collectively referred to as SBC). A true and correct copy of the relevant purchase order is attached hereto as Exhibit A. SBC DataComm provides network design, equipment staging, installation and maintenance.

11. Cisco expressly warranted to SBC that the Router would be free from defects in material and workmanship under normal use.

12. SBC thereafter sold the Router to WinMark Capital Corporation, a Minnesota corporation (WinMark). A true and correct copy of the SBC DataComm Equipment and Services Agreement is attached hereto as Exhibit B. WinMark leases technology equipment and provides hardware and software financing.

13. In connection with this sale, SBC subrogated to WinMark any claims and rights it might have against Cisco for a breach of Cisco's warranties as they applied to the Router. (Exhibit B ¶ 9.)

14. In September 2005, WinMark entered into a lease agreement with BullsEye for the Router. A true and correct copy of the relevant Lease Agreement is attached hereto as Exhibit C.

15. Pursuant to the terms of the Lease Agreement, WinMark assigned to BullsEye Cisco's warranties as they pertained to the Router. (Exhibit C ¶ 14.) As a result, BullsEye is both obligated and entitled to enforce the terms of Cisco's warranties for the Router. (*Id.*)

16. BullsEye leased the Router in order to process its customers' high speed data traffic between the customers' premises and the internet and its ultimate destination. Any malfunction of the Router could cause a customer's traffic, inbound and outbound, not to be directed according to the Internet Protocol (IP) set for that data segment and result in a loss of connectivity between the customer and the internet and the destination for the data packet.

17. However, in March 2006, BullsEye began to experience significant problems with the Router, which directly affected BullsEye's customers. These problems caused, among other things, sporadic reloading of individual Shared Port Adapters, which triggered crashes and reloading of the entire chassis, and individual serial interfaces to lock up.

3

18. These problems resulted in total blockage of IP traffic from and to BullsEye's customers' premises and caused the customers to be without any high-speed data service connectivity for an extended period of time.

19. BullsEye promptly notified Cisco in March 2006 when the problems it was experiencing first started. However, Cisco was unable to resolve these problems, and they continued sporadically. Although Cisco represented that the problem was rectified, it never identified to BullsEye what the problem was; and the problems continued through December 2006 and into 2007. The continuing problems caused one customer to inform BullsEye in December 2006 that it was terminating its relationship because the problems were not being resolved.

20. The problems BullsEye experienced in connection with its use of the Router were a direct and proximate result of Cisco's Router being defective and the inability of Cisco to correct the problems before BullsEye lost a significant number of customers. Cisco had apparently developed a fix for one of the problems encountered by BullsEye but withheld the fix because it was uncertain about the status of the maintenance agreement; in fact, BullsEye has consistently paid the requisite maintenance fees to keep the Router updated.

21. As a result of the numerous problems with the Router, and unsuccessful attempts by Cisco to fix the Router, BullsEye lost a significant number of customers and suffered irreparable damage to its credibility in offering services that involved transporting traffic over the defective Router. As a result, it became impossible for BullsEye to sell these services and any momentum initially established by BullsEye in the market was destroyed. BullsEye suffered substantial financial losses, including direct, consequential, and incidental damages and lost profits, customers and goodwill.

## COUNT I – BREACH OF CONTRACT (EXPRESS WARRANTY)

22. BullsEye incorporates and realleges the prior paragraphs of this complaint as if fully restated here.

23. Cisco manufactured and supplied the Router, which was defective and was in breach of express warranties provided by Cisco.

24. BullsEye is entitled to enforce the terms of Cisco's warranties as they pertain to the Router.

25. BullsEye notified Cisco of the problems it experienced due to the defective Router and provided Cisco with a reasonable opportunity to cure the defects, but Cisco has been unwilling or unable to do so.

26. Cisco has breached its express warranties for the Router. As a direct and proximate result of this breach, BullsEye has incurred damages in excess of $75,000, exclusive of costs and interest.

## COUNT II - BREACH OF CONTRACT (IMPLIED WARRANTY OF MERCHANTABILITY)

27. BullsEye incorporates and realleges the prior paragraphs of this complaint as if fully restated here.

28. Cisco manufactured and supplied the Router, which was defective and was in breach of the implied warranty of merchantability.

29. BullsEye is entitled to enforce the terms of Cisco's implied warranties as they pertain to the Router.

30. BullsEye notified Cisco of the problems it experienced due to the defective Router and provided Cisco with a reasonable opportunity to cure the defects, but Cisco has been unwilling or unable to do so.

31.  Cisco has breached its implied warranty of merchantability for the Router. As a direct and proximate result of this breach, BullsEye has incurred damages in excess of $75,000, exclusive of costs and interest.

WHEREFORE, BullsEye requests that this Court:

A.  Award it such compensatory damages in excess of $75,000, exclusive of costs and interest, as are just;

B.  Award it pre-complaint interest;

C.  Award it post-complaint, pre-judgment interest;

D.  Award it post-judgment interest;

E.  Award it exemplary damages;

F.  Award it punitive damages; and

G.  Grant any other appropriate relief.

HONIGMAN MILLER SCHWARTZ AND COHN LLP

s/ Norman C. Ankers
Attorneys for BullsEye Telecom, Inc.
2290 First National Building
Detroit, Michigan 48226
(313) 465-7306
P30533
nankers@honigman.com

Dated: August 3, 2009

DETROIT.3130334.2